Samuel M. Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.994.9930
Fax: 415.776.8047

Rafey S. Balabanian*
rbalabanian@edelson.com
Ari J. Scharg*
ascharg@edelson.com
Benjamin S. Thomassen*
bthomassen@edelson.com
Amir C. Missaghi*
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought

Attorneys for Plaintiff and the Putative Class

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JOE ARROYO, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>TP-LINK USA CORPORATION, a California corporation, TP-LINK RESEARCH INSTITUTE USA CORPORATION, a California corporation,<br><br>*Defendants.* | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **Violations of Cal. Civ. Code §§ 1750** *et seq.***;**<br>2. **Violations of Cal. Bus. & Prof. Code §§ 17200,** *et seq.***;**<br>3. **Violations of Cal. Bus. & Prof. Code §§ 17500,** *et seq.***;**<br>4. **Fraudulent Inducement;**<br>5. **Breach of Express Warranties; and**<br>6. **Unjust Enrichment.**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**CLASS ACTION** |

Plaintiff Joe Arroyo ("Plaintiff" or "Arroyo") brings this class action complaint ("Complaint") against Defendants TP-Link USA Corporation and TP-Link Research Institute USA Corporation (collectively, "TP-Link" or "Defendants")[1] based on the deceptive marketing of their "AV500 PowerLine" network adapters. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      TP-Link are leading developers, manufacturers, and distributors of consumer-grade networking adapters. Among TP-Link's products are the "AV500 PowerLine" network adapters ("AV500 PowerLine Adapters").[2]

2.      According to Defendants' marketing materials, their AV500 PowerLine Adapters are able to create computer networks over a home's existing electrical power lines. TP-Link claims that by using a pair of their network adapters consumers can easily create a computer network in their home that operates at speeds of "500 Mbps."[3]

3.      Defendants repeat their claims of speeds of "500 Mbps" in all of their marketing for the AV500 PowerLine Adapters. TP-Link provided online retailers with product descriptions and graphics that tout network speeds of "500 Mbps." TP-Link also printed myriad representations of speeds of "500 Mbps" on the AV500 PowerLine Adapter's

[1]      Where referring to "Defendants" or "TP-Link" collectively, Plaintiff alleges the same facts against TP-Link USA Corporation and TP-Link Research Institute USA Corporation unless otherwise specified. As such, every reference to "Defendants" or "TP-Link" shall be construed to include all Defendants jointly and acting in concert, unless a particular Defendant is identified by name.
[2]      TP-Link included the AV500 PowerLine technology in model numbers TL-WPA4230PKIT, TL-WPA4220, TL-WPA4220KIT, TL-PA4010, TL-PA4010KIT, and TL-PA511KIT (collectively, the "AV500 PowerLine Adapters").
[3]      Computer network connections are measured in units of "bits per second" or "bps." Because of the speed of modern networks, network adapter manufacturers use prefixes of "Kilo" (1,000 bits), "Mega," (1 million bits) and "Giga" (1 billion bits) for their products. Thus, "Mbps" is equal to "Megabits per second" or 1 million bits per second. *See Kbps, Mbps, Gbps - Bit Rate Units for Computer Networks*, http://compnetworking.about.com/od/speedtests/g/kbps-mbps-gbps-network-bit-rates.htm (last visited Nov. 12, 2014).

1    packaging and the adapters themselves.

2          4.    However, TP-Link's PowerLine network adapters simply cannot perform as

3    advertised when actually installed in a consumer's home. Industry experts—including the

4    manufacturer of the underlying technology that powers the AV500 PowerLine Adapters—

5    have revealed in technical publications that the adapters' "best case" speeds barely exceed

6    100 Mbps—1/5 of what's advertised. Other technical publications have also tested the

7    AV500 PowerLine Adapters and found that they operate at speeds roughly 90% slower than

8    advertised. Such a drastic gap does not amount to a negligible difference or simply puffery;

9    rather, such a vast difference in performance is fundamentally material and has a direct

10   impact on a consumer's decision to buy (or not buy) Defendants' product, as well as the price

11   they are willing to pay for such a product.

12         5.    Average consumers in the market for home networking adapters lack the

13   requisite technical expertise to understand the functionality of TP-Link's AV500 PowerLine

14   Adapter technology, and they trust TP-Link to convey accurate specifications regarding the

15   adapters' speed. Because Defendants did not, thousands of consumers have been misled into

16   buying network adapters that do not perform as advertised.

17         6.    Accordingly, this putative class action lawsuit seeks (i) to prevent Defendants

18   from continuing to misrepresent the performance capabilities of their AV500 PowerLine

19   Adapters, and (ii) actual damages for those deceived into purchasing the products under false

20   pretenses.

21                                    **PARTIES**

22         7.    Plaintiff Joe Arroyo is a natural person and citizen of the State of Florida.

23         8.    Defendant TP-Link USA Corporation is a corporation incorporated in and

24   existing under the laws of the State of California with its principal place of business located

25   at 975 Overland Court, San Dimas, California 91773. TP-Link USA Corporation does

26   business throughout the United States and the State of California, including in this District.

27         9.    Defendant TP-Link Research Institute USA Corporation is a corporation

28   incorporated in and existing under the laws of California with its principal place of business

located at 224 Airport Parkway, Suite 620, San Jose, California 95110. TP-Link Research

Institute USA Corporation does business throughout the United States and the State of

California, including in this District.

## JURISDICTION AND VENUE

10.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2),

because (i) at least one member of the Class is a citizen of a different state than the

Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and

costs, and (iii) none of the exceptions under that subsection apply to this action.

11.    This Court has personal jurisdiction over Defendants because Defendants

conduct business in California, are headquartered in California, and because the events

giving rise to this lawsuit occurred, in substantial part, in California.

12.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant

TP-Link Research Institute USA Corporation resides in this District and both Defendants

conduct significant business here. Venue is additionally proper because Defendant TP-Link

Research Institute USA Corporation maintains its headquarters and principal place of

business in this District.

## FACTUAL BACKGROUND

**I.    A Brief Overview of TP-Link and Their AV500 PowerLine Adapters.**

13.    Founded in 2008 as the U.S. presence of non-party TP-LINK Technologies

Co., LTD, TP-Link USA has rapidly expanded its operations as a manufacturer and

distributor of computer networking equipment in the United States. In 2013, TP-LINK

Technologies Co., LTD officially registered TP-Link Research Institute USA Corporation as

a separate entity to carry on the research and testing of TP-Link USA's products.

14.    Among the products sold by TP-Link USA (and researched and tested by TP-

Link Research Institute USA) are those under the "PowerLine" local area network[4] adapter

---

[4]    A local area network ("LAN") is computer network typically confined to a single
residence or building that electronically connects computers, printers, and other network-
enabled devices. *See local area network (LAN) (computer technology) -- Encyclopedia
Britannica*, www.britannica.com/EBchecked/topic/345541/local-area-network-LAN (last
visited Nov. 12, 2014). While a LAN can be connected to the internet, local area networks

---

category. For some time, Defendants have sold products that, as explained more below, use the electrical power lines in a consumer's home to create a computer network. As explained more in Section II.1, PowerLine network adapter technology evolved from advertised speeds of 14 Mbps to 200 Mbps.

15.     But in or around May 2012, TP-Link launched the first of their "AV500" Gigabit PowerLine Adapters. With the "AV500" technology, TP-Link promised a "convenient network at 500 Mbps." Indeed, Howard He, a California-based product engineer at TP-Link USA, stated in a press release that the AV500 PowerLine adapters "will transmit multiple HD video streams to every room or office, making it an exceptional choice for an easy-to-build multimedia network."[5]

16.     Defendants have marketed and sold their AV500 PowerLine Adapters online at retailers such as Newegg.com and Amazon.com, as well as traditional brick-and-mortar retailers, including Microcenter. At the online shops, TP-Link makes several representations that the AV500 PowerLine Adapters operate at speeds of  "500 Mbps." And, relevant to both online and brick-and-mortar stores, TP-Link printed representations on the adapters' packaging that they operate at speeds of "500 Mbps."

17.     For their online retailers, TP-Link created and disseminated myriad representations that the AV500 PowerLine Adapters operate at speeds of 500 Mbps. For example, TP-Link provided NewEgg.com and Amazon.com product page descriptions with that include "High-speed AV 500Mbps Powerline Adapter"[6] and "Powerline Gigabit Adapter Starter Kit, up to 500Mbps."[7] *See* Figures 1 and 2.

---

can stand alone as self-contained computer networks (*i.e.*, internal networks or *intra*-net) on which documents, music and media files can be shared across computers and devices.

[5]     *TP-LINK Announces the AV500 Gigabit Powerline Adapter | techPowerUp*, www.techpowerup.com/166412/tp-link-announces-the-av500-gigabit-powerline-adapter.html (last visited Nov. 12, 2014).

[6]     *TP-LINK TL-PA511KIT AV500 Gigabit Powerline Adapter Starter Kit - Newegg.com*, www.newegg.com/Product/Product.aspx?Item=N82E16833704139 (last visited Nov. 12, 2014).

[7]     *TP-LINK TL-PA511 KIT AV500 Powerline Gigabit Adapter Starter Kit, up to 500Mbps at Amazon.com*, www.amazon.com/gp/product/B0081FLFQE (last visited Nov. 12, 2014).

**TP-LINK** The Reliable Choice

# TP-LINK TL-PA511KIT High-speed AV 500Mbps Powerline Adapter Starter Kit w/Gigabit Port

(**Figure 1**, showing Defendants' product description at Newegg.com)

## TP-LINK TL-PA511 KIT AV500 Powerline Gigabit Adapter Starter Kit, up to 500Mbps
by TP-LINK

(**Figure 2**, showing Defendants' product description at Amazon.com)

18.    Defendants also provide the graphic shown in <u>Figure 3</u> to the online retailers. In this graphic, the first thing TP-Link highlights about the AV500 PowerLine Adapters is their "500Mbps" speed.



(**Figure 3.**)

19.    And for brick-and-mortar stores, TP-Link designed the front of their AV500 PowerLine Adapter's packaging to represent that they operate at speeds of "500Mbps."[8] *See* <u>Figure 4</u>.

---

[8]    Defendants also provide photographs of the adapters' packaging to online retailers as part of the AV500 PowerLine Adapters' marketing. Moreover, Defendants cause the AV500 PowerLine Adapters that are purchased online to be shipped in packaging with the same on-box representations shown in <u>Figures 4 and 5</u>.



(**Figure 4**, showing portions of the front of the TL-PA511KIT AV500
PowerLine Adapter's packaging that claims "500Mbps")[9]

20.     Likewise, TP-Link designed the back of the adapters' packaging to mirror the
same "500Mbps" claims. On the back, TP-Link claims that "With a speed of up to 500Mbps,
TL-PA511 transmits multiple HD streams and even 3D movies to every room." *See* Figure 5.
TP-Link also created a comparison matrix to ostensibly help consumer select "which is the
best powerline product." Within that matrix, TP-Link represents that the AV500 PowerLine
adapters operate at "500Mbps" "Speed Over Powerline." *See* Figure 5.



(**Figure 5**, showing a portion of the back of TL-PA511KIT AV500 PowerLine
Adapter's packaging with representations of "500Mbps" network speeds.)[10]

21.     TP-Link also printed "500Mbps" on the front of their AV500 PowerLine
Adapters to represent their operating speeds. *See* Figure 6.

_____

[9]     Figure 4 is an excerpt taken from the front of the TL-PA511Kit PowerLine Adapter's
packaging, a true and accurate reproduction of which is attached hereto as Exhibit A.
[10]     Figure 5 is an excerpt taken from the back of the TL-PA511Kit PowerLine Adapter's
packaging, a true and accurate reproduction of which is attached hereto as Exhibit B.



(**Figure 6**, showing the front of a TL-PA511Kit AV500 PowerLine Adapter.)

22. Taken together, the marketing and advertisements for the TP-Link PowerLine adapters[11]—including those appearing on consumer retail websites, such as NewEgg.com and Amazon.com—make clear that the AV500 PowerLine Adapters operate at speeds at or near 500 Mbps.

## II. A Brief Explanation of PowerLine Adapters and Why TP-Link's AV500 Adapters Cannot Perform as Advertised

23. As introduced above, Defendants represent to consumers that their AV500 PowerLine Adapters operate at speeds of 500 Mbps. A closer examination of the technology used in the PowerLine adapters reveals that TP-Link's AV500 PowerLine Adapters will never operate at speeds at or even near 500 Mbps. Instead, real-world testing shows that Defendants' AV500 PowerLine Adapters operate at less than 1/5 of the advertised speeds.

*1. A primer on PowerLine network adapters.*

24. PowerLine adapters are designed to turn existing power lines into a functional computer network and are marketed as an alternative to wireless (*e.g.*, WiFi) and traditional wired networks (*e.g.*, Ethernet cabling). For instance, consumers may seek an alternative to WiFi networks that can be obstructed by thick walls or other wireless networks, and that are typically available with advertised speeds of only 140 Mbps. Or, consumers may seek

[11] All of Defendants' marketing and advertising of their AV500 PowerLine Adapters, including those found at Newegg.com and Amazon.com, were provided by Defendants and emanated from California (*i.e.*, either from TP-Link USA's sales and marketing department located in or around Los Angeles, California, or TP-Link Research Institute USA's technical writers or engineers located in or around San Jose, California).

something other than Ethernet cabling which, while capable of speeds of 1,000 Mbps, requires consumers to install dedicated cables throughout their homes to create a computer network, likely a costly undertaking.

25.    PowerLine adapters, though, use the existing electrical cables present in consumers' homes, turning ubiquitous electrical plugs into network access points. Consumers need at least two PowerLine adapters plugged into different electrical sockets in the same home to create a network. To access the network, consumers connect their computers or other network devices to the adapters with the provided Ethernet cables. *See* Figure 7.



(**Figure 7**, depicting a typical PowerLine network.)

26.    The original HomePlug standard was released in 2001 and was advertised to reach speeds of 14 Mbps. The next generation of PowerLine adapters, the HomePlug AV standard, was released in 2005 and promised speeds of 200 Mbps over a home's existing power lines.[12] In part, HomePlug AV was able to operate faster than the original HomePlug standard because it operated over a wider frequency spectrum—2 to 28 Megahertz ("Mhz") compared to the original HomePlug's 4.5 to 21 Mhz).

27.    But by the early part of this decade, consumers and manufactures wanted faster speeds than the HomePlug AV standard could offer. As a result, TP-Link designed PowerLine adapters using technology that promised speeds of 500 Mbps.

2.    *TP-Link designed the AV500 PowerLine Adapters around the Atheros AR7400 networking chip that operates at speeds of 140 Mbps.*

28.    In 2011, non-party Qualcomm Atheros launched and marketed its Atheros AR7400 networking chip to manufacturers such as TP-Link. Initially, Qualcomm Atheros

[12]    For some of the same reasons discussed below for the AV500 PowerLine Adapters, it is doubtful that any HomePlug AV adapters could ever achieve speeds of 200 Mbps.

claimed that its AR7400 would allow manufacturers to create PowerLine adapters that could reach speeds of "up to 500 Mbps." Qualcomm Atheros' AR7300 was apparently able to achieve such speeds because it utilized communication frequencies between 30 and 50 MHz in addition to the HomePlug AV frequencies of 2 to 28 Mhz.

29.     Soon after the AR7400's launch, however, a well-respected technical publication, EDN Network,[13] noted inherent problems with Qualcomm Atheros's technology. In short, EDN found that the claimed performance gains from using frequencies from 30 to 50 Mhz are likely impossible to achieve in the real world.[14] Specifically, EDN stated:

> Between 30 and 50 MHz, the FCC requires that broadcasters employ much lower transmission power than is the case between 0 and 30 MHz…. And as my engineering readership knows well, it's not possible to cost-effectively (if at all) design a system that instantaneously decreases broadcast power at the 30 MHz threshold.

> … according to [a competitor of Qualcomm Atheros], … Atheros … begin[s] decreasing transmission power well *before* the 30 MHz point in order to meet FCC requirements *at and beyond* 30 MHz. And due to high-frequency attenuation effects, the portion of the powerline networking signal above 30 MHz is unusable in most practical configurations, anyway. So according to [the competitor], Atheros has degraded its chipset's feasible-frequency bandwidth in order to support extended frequencies that likely will be unavailable to it, anyway.

30.     In laymen's terms, EDN was suspicious of Qualcomm Atheros's claims that the Atheros AR7400 could operate at speeds of 500 Mbps and spoke with multiple industry experts for their opinions on the matter. Those experts concluded that the technology Qualcomm Atheros employed to create 500 Mbps networks (*i.e.*, the PowerLine technology using frequencies between 30 and 50 MHz) is "unusable" in "most practical configurations" (*e.g.*, in a consumer's home).

31.     EDN also spoke with a Qualcomm Atheros representative regarding the claims of "500 Mbps." According to EDN:

[13]     EDN Network, at www.EDN.com, is an "electronics community for engineers, by engineers" that is highly technical (*i.e.*, a publication consumers in the market for PowerLine adapters would not frequent). *See EDN*, http://www.edn.com/aboutus (last visited Nov. 12, 2014).

[14]     *CES 2011: Networking Over Powerline Performance Improvements Will Come, But Only In Time | EDN*, http://www.edn.com/electronics-blogs/brians-brain/4311206/CES-2011-Networking-Over-Powerline-Performance-Improvements-Will-Come-But-Only-In-Time (last visited Nov. 12, 2014).

Atheros said that their testing showed best case [network] throughput of around 140 Mbps for their reference adapters, which did not vary significantly across locations in their home testing. They also said the 70 Mbps throughput I got for most of my testing indicated that the extended frequencies used in their 500 Mbps technology were not being used.

32. That is, Qualcomm Atheros revealed that its testing of the AR7400 chip (which powers the TP-Link AV500 PowerLine Adapters) showed that the chip had a "best case" network speed of "around 140 Mbps." In other words, devices built with the Atheros AR7400 chip operate at speeds of up to "140 Mbps" in real-world conditions, not speeds of up to "500 Mbps."

33. TP-Link designed their AV500 PowerLine Adapters around the unmodified Atheros AR7400 networking chip. As a result, the "best case" and "up to" network speed of Defendants' AV500 PowerLine Adapters is "around 140 Mbps" and not the advertised "500 Mbps."

> 3. *Real-world testing confirms that the TP-Link's AV500 PowerLine Adapters do not perform as advertised.*

34. Industry insiders aren't alone in their skepticism of the technology powering the AV500 PowerLine Adapters. Several online computer networking publications have conducted tests of the AV500 PowerLine Adapters and found that the adapters are not capable of operating at speeds at or near 500 Mbps in real world conditions.

35. For example, SmallNetBuilder.com[15] conducted tests of several PowerLine adapters that used the Atheros AR7400 networking chip. From its testing, SmallNetBuilder found that the network adapters had network speeds from between 65 Mbps to 83 Mbps.[16] Worse, when SmallNetBuilder placed the adapters at opposite ends of a sample home, the fastest network speed it obtained was 50.2 Mbps—10% of the advertised speeds.

[15] SmallNetBuilder is a website for "IT professionals," "chief technology officers," "network installers," and "industry analysts," (*i.e.*, a website average consumers in the market for PowerLine adapters would not typically read). *See About Us–SmallNetBuilder*, http://www.smallnetbuilder.com/home/about-us (last visited Nov. 12, 2014).

[16] *HomePlug AV 500 Adapter Roundup - Admin, Performance, Closing Thoughts – SmallNetBuilder*, http://www.smallnetbuilder.com/lanwan/lanwan-reviews/31624-homeplug-av-500-adapter-roundup?start=2 (last visited Nov. 12, 2014).

36.     Similarly, Hexus.net[17] conducted a test of TP-Link's AV500 PowerLine Adapters. In its test, Hexus.net found that when it placed the TP-Link PowerLine Adapters "roughly 50ft" apart in "a relatively new-build property," the adapters only operated at speeds of 68.7 Mbps—far short of the advertised 500 Mbps.

37.     Such performance is typical of TP-Link's AV500 technology and verifiable using the software provided by TP-Link. Figure 8 shows the network speeds obtained with two TP-PA511KIT PowerLine Adapters plugged into electrical outlets roughly 35 feet apart in a sample residential home. In that case, the TP-PA511KIT PowerLine Adapters operated at speeds of 56 Mbps—almost 90% slower than the advertised speeds.



(**Figure 8**, showing a network speed of 56 Mbps for two TL-PA511KIT PowerLine Adapters only 35 feet apart)

38.     As such, it is evident that Defendants' AV500 PowerLine Adapters do not operate at 500 Mbps. Yet, Defendants centered their marketing and advertising on the "500 Mbps" speed to deceive consumers into purchasing their AV500 PowerLine Adapters. TP-Link chose "500 Mbps" for the represented speed of the adapters knowing that average consumers are unable to discern the falsehood of their representations at the time of sale. Unfortunately, thousands of consumers have been deceived by Defendants' marketing and

---

[17]     Hexus.net is "the [United Kingdom's] number one independent technology news and reviews website" (*i.e.*, a website likely not known to the average US consumer). *See HEXUS.net – About*, http://hexus.net/static/about/ (last visited Nov. 12, 2014).

1  purchased TP-Link's AV500 PowerLine Adapters believing TP-Link's representations to be

2  true.

3  **III.    Plaintiff Arroyo's Experience with his AV500 PowerLine Adapters.**

4          39.    In or around January 2014, Plaintiff Arroyo purchased TP-Link's AV500

5  PowerLine Adapters, model number TL-PA511KIT, for $64.96 from the online retailer

6  NewEgg.com.

7          40.    Before purchasing the network adapters (on the same day, in or around

8  January 2014), Plaintiff Arroyo saw Defendants' representations on Newegg.com claiming

9  that the adapters operate at speeds of 500 Mbps. The representations he saw were created by

10  Defendants and provided to Newegg.com. Specifically, Plaintiff Arroyo saw representations

11  on Newegg.com that the TL-PA511KIT would operate at speeds of 500 Mbps and that "with

12  a convenient network at 500 Mbps, [he could] make full use of [his] network connected

13  devices using any bandwidth intensive applications." Plaintiff Arroyo also saw on

14  Newegg.com the representations reproduced in Figures 1 and 3.

15          41.    Moreover, when he received the TP-PA511KIT AV500 PowerLine Adapters

16  in the mail, Plaintiff Arroyo read the representations that Defendants placed on the adapters'

17  packaging. Those representations were identical to the reproductions in Figures 4 and 5.

18  Specifically, Plaintiff Arroyo read Defendants' representations that the Adapters would

19  operate at speeds of "500Mbps" and that the Adapters were "HD 500Mbps Homeplug AV"

20  certified. Plaintiff Arroyo also saw on the adapters themselves that they were rated for

21  "500Mbps," just as depicted in Figure 6.

22          42.    Unfortunately, and as described herein, the TP-Link PowerLine Adapters

23  Plaintiff purchased did not perform as advertised. Specifically, the TP-Link PowerLine

24  Adapters were not capable of operating at speeds at or near 500 Mbps. In fact, Plaintiff

25  Arroyo estimates that he was never able to achieve speeds greater than about 100 Mbps with

26  the TP-Link PowerLine Adapters he purchased.

27          43.    Arroyo reasonably relied upon Defendants' express representations about the

28  TP-Link PowerLine Adapters' performance in choosing to purchase that product. Namely,

that the TP-Link PowerLine Adapters would be capable of operating at speeds of "500 Mbps." But for these representations, Arroyo would not have purchased the TP-Link PowerLine Adapters or he would have paid less money for them. Plaintiff has suffered damages as the result of Defendants' misrepresentations in the form of money paid to purchase the TP-Link PowerLine Adapters.

### CLASS ALLEGATIONS

44.     **Class Definition:** Plaintiff Arroyo brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of similarly situated individuals defined as follows:

> All individuals and entities in the United States that purchased TL-WPA4230PKIT, TL-WPA4220, TL-WPA4220KIT, TL-PA4010, TL-PA4010KIT, and/or TL-PA511KIT PowerLine Adapters.

Excluded from the Class and are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entity's current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

45.     **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals and other entities. Class members can be easily identified through Defendants' or their agents' records.

46.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

        a)     Whether Defendants intentionally misrepresented that their AV500 PowerLine Adapters operate at speeds of 500 Mbps;

b)     Whether Defendants' conduct described herein was willful;

c)     Whether Defendants' conduct described herein constitutes a violation of California's Consumers Legal Remedies Act (Ca. Civ. Code. §§ 1750, *et seq.*);

d)     Whether Defendants' conduct described herein constitutes a violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

e)     Whether Defendants' conduct described herein constitutes a violation of the False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*);

f)     Whether Defendants' conduct described herein constitutes fraud in the inducement;

g)     Whether Defendants' conduct described herein constitutes a breach of express warranty; and

h)     Whether Defendants' conduct has caused them to be unjustly enriched.

47.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

48.     **Adequate Representation**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class, and he has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

49.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure

compatible standards of conduct toward the members of the Class and making final

injunctive relief appropriate with respect to the Class as a whole. Defendants' policies

challenged herein apply and affect the members of the Class uniformly and Plaintiff's

challenge of these policies hinges on Defendants' conduct with respect to the Class as a

whole, not on facts or law applicable only to Plaintiff.

50.     **Superiority**: This class action is also appropriate for certification because

class proceedings are superior to all other available methods for the fair and efficient

adjudication of this controversy and joinder of all members of the Class is impracticable. The

damages suffered by the individual members of the Class will likely be small relative to the

burden and expense of individual prosecution of the complex litigation necessitated by

Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual

members of the Class to obtain effective relief from Defendants' misconduct. Even if

members of the Class could sustain such individual litigation, it would not be preferable to a

class action because individual litigation would increase the delay and expense to all parties

due to the complex legal and factual controversies presented in this Complaint. By contrast, a

class action presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court. Economies

of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

51.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and

"Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of Plaintiff and the Class)**

52.     Plaintiff incorporates by reference the foregoing allegations as if fully set

forth herein.

53.     The Consumers Legal Remedies Act ("CLRA") applies to Defendants'

actions and conduct as described herein because it extends to transactions that are intended to

result, or which have resulted, in the sale of goods or services to consumers.

54.     Defendants are "persons" as defined by Cal. Civ. Code § 1761(c).

55.     Plaintiff and each member of the Class are "consumers" as defined by Cal. Civ. Code § 1761(a).

56.     Defendants' AV500 PowerLine Adapters are "goods" within the meaning of Cal. Civ. Code § 1761(a).

57.     As described herein, Defendants have engaged in deceptive practices, unlawful methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750 *et seq.*, to the detriment of Plaintiff and the Class.

58.     Defendants, acting with knowledge, intentionally, and unlawfully, brought harm upon Plaintiff and the Class by representing that the AV500 PowerLine Adapters were capable of operating at speeds of 500 Mbps when in fact Defendants' representations were impossible to achieve under real world conditions.

59.     Specifically, Defendants violated Cal. Civ. Code § 1750 in at least the following respects:

       a.      In violation of § 1770(5), representing that the AV500 PowerLine Adapters had characteristics, ingredients, uses, benefits, or quantities which they did not have;

       b.      In violation of § 1770(7), representing that the AV500 PowerLine Adapters were of a particular standard, quality, or grade of which they are not; and

       c.      In violation of § 1770(9), advertising the AV500 PowerLine Adapters with the intent not to sell their goods as advertised.

60.     Defendants' unfair or deceptive acts or practices were capable of deceiving a substantial portion of the purchasing public.

61.     Defendants knew that they were unable or unwilling to manufacture, distribute, and sell network adapters capable of performing as advertised at the time that they made representations claiming that the AV500 PowerLine Adapters were capable of operating at speeds of 500 Mbps. Specifically, Defendants contracted with Qualcomm Atheros to purchase the AR7400 chip used in the AV500 PowerLine Adapters and would

have known that industry experts, including Qualcomm Atheros, rated the AR7400 at speeds up to 140 Mbps not 500 Mbps. Moreover, Defendants' internal testing would have shown that the AV500 PowerLine Adapters were not capable of 500 Mbps in a typical residential home.

62.    Once Defendants made specific public representations regarding the performance capabilities of the AV500 PowerLine Adapters, Defendants were under a duty to Plaintiff and the Class to disclose their inability or unwillingness to manufacture, distribute, and sell network adapters capable of performing as advertised because:

a.    Defendants were in a superior position to know the true state of facts about the performance capabilities of the AV500 PowerLine Adapters;

b.    Plaintiff and the Class could not reasonably have been expected to learn or discover that Defendants did not manufacture the AV500 PowerLine Adapters to be capable of performing as advertised;

c.    Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover that the AV500 PowerLine Adapters were not capable of performing as advertised; and

d.    Defendants knew, and in fact intended, that Plaintiff and the Class members would rely on Defendants' representations regarding the network adapters' performance capabilities in choosing whether or not to purchase the AV500 PowerLine Adapters.

63.    In failing to disclose their inability or unwillingness to manufacture and sell network adapters that performed as advertised, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

64.    The facts concealed or not disclosed by Defendants, including that the AV500 PowerLine Adapters were not capable of operating at speeds of 500 Mbps, to Plaintiff and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the AV500 PowerLine Adapters.

65.     Plaintiff and the Class reasonably expected their network adapters to be capable of performing as Defendants advertised based upon Defendants' representations found online, on the network adapters' packaging, and printed on the network adapters. Plaintiff's and Class members' expectations were reasonable under the circumstances.

66.     The performance capabilities of the AV500 PowerLine Adapters is and was a material selling point of Defendants' network adapters, and a primary reason to purchase the products.

67.     Plaintiff and members of the Class relied on the representations made by Defendants about the performance capabilities of the AV500 PowerLine Adapters when purchasing the network adapters.

68.     Defendants' false representations about the performance capabilities of the AV500 PowerLine Adapters were acts likely to mislead Plaintiff and the members of the Class acting reasonably under the circumstances.

69.     Through the misrepresentations and omissions detailed herein, Defendants wrongfully induced Plaintiff and the other members of the Class to purchase the AV500 PowerLine Adapters when they otherwise would not have purchased the network adapters or would have only agreed to purchase them at a lower price.

70.     As a direct and proximate result of Defendants' violation of Cal. Civ. Code §§ 1750, *et seq.*, Plaintiff and each Class member have suffered harm in the form of paying monies to Defendants without receiving the entire benefit of his or her bargain.

71.     The industry standard lifespan of network equipment is three (3) to five (5) years.[18] As a result, Plaintiff and the members of the Class are likely to purchase AV500 PowerLine Adapters or similar products from TP-Link in the future.

72.     Under Cal. Civ. Code § 1780(a) and (b), Plaintiff, individually and on behalf of the Class, seeks an injunction requiring Defendants to cease and desist the illegal conduct alleged in this Complaint, and all other appropriate remedies for their violations of the

---

[18]     *See* Cisco Capital, *Financing Your Lifecycle Management*, www.cisco.com/web/ europe/cceu/assets/Financing_LifecycleManagementCustomer_131008.ppt (last visited Nov. 12, 2014).

CLRA. For the sake of clarity, Plaintiff explicitly disclaims any claim for damages under the CLRA at this time.

**SECOND CAUSE OF ACTION**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the Class)**

73.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

74.    California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

75.    The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact. A business practice need only meet one of the three criteria to be considered unfair competition.

76.    The performance capabilities of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the performance capabilities of a product is materially misleading.

77.    As described herein, Defendants have engaged in deceptive business practices, as defined by the UCL, by misrepresenting that the AV500 PowerLine Adapters were capable of operating at speeds of 500 Mbps under real world conditions.

78.    Defendants' representations were, in fact, false. Defendants' network adapters do not (and cannot) actually meet the advertised performance in a typical consumer residence. In particular, Defendants' claimed speed of "500 Mbps" is theoretical and not achievable under real-world conditions, as evidenced by Qualcomm Atheros's statements and testing conducted by industry experts.

79.    Defendants have violated the fraudulent prong of the UCL by knowingly making false representations to consumers—including Plaintiff and the Class—regarding the AV500 PowerLine Adapters' capability of operating at speeds of 500 Mbps. These

1   representations were made in an effort to convince consumers to purchase the AV500

2   PowerLine Adapters.

3        80.   Reasonable consumers are likely to be, and Plaintiff and the Class were,

4   deceived by Defendants' misrepresentations about the full performance capabilities of the

5   AV500 PowerLine Adapters.

6        81.   Defendants also violated the UCL's unfair prong by causing substantial injury

7   to consumers through their fraudulent conduct described above. The injuries caused by

8   Defendants' unfair conduct are not outweighed by any countervailing benefits to consumers

9   or competition, and the injury is one that consumers themselves could not reasonably have

10  avoided. Given the information asymmetry between Defendants and consumers regarding the

11  AV500 PowerLine Adapters' performance capabilities, Defendants knew or had reason to

12  know that Plaintiff and the Class could not have reasonably known or discovered the falsity

13  of representations about the network adapters' performance capabilities.

14       82.   Defendants' fraudulent and unfair conduct occurred during the marketing,

15  distribution, and sale of network adapter products, and therefore occurred in the course of

16  Defendants' business practices.

17       83.   Defendants' fraudulent and unfair conduct directly and proximately caused

18  Plaintiff and the Class actual monetary damages in the form of the price paid for their AV500

19  PowerLine Adapters—typically around $65—or, at least, the difference between what they

20  paid for the network adapters and their actual value.

21       84.   But for Defendants' conduct as described herein, Plaintiff and the Class would

22  not have purchased the AV500 PowerLine Adapters, or would have paid substantially less

23  for them.

24       85.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1)

25  requiring Defendants to cease the unfair practices described herein; (2) requiring Defendants

26  to restore to Plaintiff and each Class member any money acquired by means of unfair

27  competition (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to

28  Cal. Code Civ. Proc. § 1021.5.

### THIRD CAUSE OF ACTION
**Violation of False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500 *et seq.***
**(On Behalf of Plaintiff and the Class)**

86.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

87.     California's False and Misleading Advertising Law ("FAL") prohibits corporations from intentionally disseminating advertisements for products or services that are "unfair, deceptive, untrue, or misleading." Cal. Bus. & Prof. Code §17500.

88.     As depicted in <u>Figures 1–6</u> and detailed throughout this Complaint, Defendants have disseminated unfair, deceptive, untrue, and misleading advertisements that claim the AV500 PowerLine Adapters are capable of operating at speeds of 500 Mbps. As detailed in <u>Section II</u> above, these advertisements are false and misleading and were designed to convince consumers to purchase the network adapters. In short, Defendants' advertisements are false because they advertise performance results that Defendants knew consumers were not able to achieve.

89.     A reasonable person is likely to be deceived by Defendants' advertisements.

90.     Defendants knew or should have known when creating and disseminating these advertisements that they contained materially false and misleading information. As the developers, engineers, testers, and distributors of the AV500 PowerLine Adapters, Defendants are intimately familiar with the network adapters' functionality. Thus, it's reasonable to infer that Defendants are (and were) aware of the fact that the AV500 PowerLine Adapters did not (and cannot) operate at speeds of 500 Mbps in real world conditions.

91.     Defendants' conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for the AV500 PowerLine Adapters—typically around $65—or, at least, the difference between what they paid for the network adapters and their actual value.

92.     Plaintiff seeks an order (1) requiring Defendants to cease the false advertising practices described herein; (2) requiring Defendants to restore to Class members any money

1   acquired by means of false advertising (restitution); and, (3) awarding reasonable costs and

2   attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

3                        **FOURTH CAUSE OF ACTION**
                              **Fraud in the Inducement**
4                      **(On Behalf of Plaintiff and the Class)**

5          93.      Plaintiff incorporates by reference the foregoing allegations as if fully stated

6   herein.

7          94.      As described with particularity herein, Defendants have designed, overseen,

8   and disseminated false and misleading advertising for their AV500 PowerLine Adapters.

9   This conduct includes, but is not limited to, Defendants promoting and advertising that the

10  AV500 PowerLine Adapters were capable of operating at speeds of 500 Mbps when

11  Defendants knew or should have known that the network adapters did not (and cannot)

12  operate at such speeds in a typical consumer residence.

13         95.      By committing the acts alleged in this Complaint, Defendants have designed

14  and disseminated untrue and misleading statements through fraudulent advertising in order to

15  sell or induce members of the public to purchase the AV500 PowerLine Adapters.

16         96.       Performance capability is a material term of any transaction for a network

17  adapter because it directly affects a consumer's choice of, or conduct regarding, whether to

18  purchase a particular network adapter or type of networking technology (*e.g.*, PowerLine

19  versus WiFi or Ethernet networks). Any deception of fraud related to the performance of a

20  network adapter is materially misleading.

21         97.      Misrepresentations regarding a network adapter's performance are likely to

22  mislead a reasonable consumer who is acting reasonably under the circumstances.

23         98.      Defendants knew or should have known of the falsity of the representations

24  they made regarding the performance of their AV500 PowerLine Adapters.

25         99.      Defendants intended that the deceptive and fraudulent misrepresentations they

26  made would induce a consumer to rely and act by purchasing their AV500 PowerLine

27  Adapters.

28         100.     Defendants charged and collected from Plaintiff and members of the Class

monies for a product that did not and could not meet the advertised performance. Accordingly, Plaintiff and the members of the Class have suffered injury in fact and lost money in justifiable reliance on Defendants' misrepresentations of material fact.

101.     In deceiving Plaintiff and the Class by misrepresenting the actual performance of the AV500 PowerLine Adapters, and inducing Plaintiff and the Class to proffer payment based on those misrepresentations, Defendants have engaged in and have, and/or continue to have, direct knowledge of fraudulent practices designed to mislead and deceive consumers.

102.     Plaintiff and the Class have suffered harm as a proximate result of Defendants' violations of law and wrongful conduct.

103.     Plaintiff, on behalf of himself and the Class, seeks damages from Defendants' unlawful conduct.

## FIFTH CAUSE OF ACTION
### Breach of Express Warranties
### (On Behalf of Plaintiff and the Class)

104.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

105.     Pursuant to California Commercial Code § 2313, Defendants' sale of their AV500 PowerLine Adapters included express warranties created by Defendants' affirmations of fact, made through the marketing materials and advertisements displayed on retailers' websites, on the network adapters' packaging, and printed on the network adapters.

106.     Defendants' express warranties included affirmations of fact and promises that the AV500 PowerLine Adapters would conform to the performance capabilities represented on Defendants' retailers' websites, on the network adapters' packaging, and printed on the network adapters.

107.     Specifically, Defendants' statements included affirmations of fact and promises that the AV500 PowerLine Adapters were capable of operating at speeds of 500 Mbps. As such, Defendants expressly warranted that the AV500 PowerLine Adapters would conform to such performance capabilities.

108.     Defendants, under the California Commercial Code, were obligated to deliver

the AV500 PowerLine Adapters as advertised, promised, and/or described.

109. Defendants breached their express warranties because the network adapters did not—and could not—conform to the performance capabilities advertised on Defendants' retailers' websites, on the network adapters' packaging, and printed on the network adapters.

110. Defendants' failure to provide Plaintiff and the Class members with network adapters that conform to advertised performance capabilities constitutes a breach of the express warranty to include such performance capabilities with the AV500 PowerLine Adapters.

111. Plaintiff and the members of the Class relied on Defendants' affirmations, promises, and descriptions when they purchased the AV500 PowerLine Adapters. But for Defendants' affirmations and promises, Plaintiff and the Class would not have purchased the AV500 PowerLine Adapters, or would have only agreed to purchase them at a lower price. As such, Defendants' breach of express warranties injured Plaintiff and the Class because they purchased a product of diminished value—network adapters that do not actually perform as described by Defendants' affirmations and promises.

112. Because the network adapters that Plaintiff and the Class members received were not capable of performing as expressly warranted and represented by Defendants, Plaintiff and the members of the Class have been damaged insofar as they did not receive the benefit of their bargain.

113. By serving this Complaint, Plaintiff and the Class hereby give Defendants notice that they have breached the express warranties described above. Plaintiff and the members of the Class request maximum damages as provided by the California Commercial Code.

### SIXTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

114. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

115. Plaintiff and the Class have conferred a benefit upon Defendants in the form

of the money Defendants received from them for the purchase of the AV500 PowerLine Adapters, which did not and could not perform as Defendants promised.

116.    Defendants appreciate and/or have knowledge of the benefits conferred upon them by Plaintiff and the Class.

117.    Under principles of equity and good conscience, Defendants should not be permitted to retain the money obtained from Plaintiff and the members of the Class, which Defendants have unjustly obtained as a result of their deceptive and misleading advertising.

118.    Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any money Defendants have retained as a result of the unlawful and/or wrongful conduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joe Arroyo on behalf of himself and the Class respectfully requests that the Court enter an order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Joe Arroyo as representative of the Class, and appointing his counsel as class counsel;

B.    Declaring that Defendants' actions, as set out above, violate the CLRA (Cal. Civ. Code §§ 1750, *et seq.*); UCL (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); the FAL (Cal. Bus. & Prof. Code §§ 17500, *et seq.*), and constitute fraud in the inducement, breach of express warranties, and unjust enrichment;

C.    Awarding damages, including statutory and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

D.    Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

E.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

F.    Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

1        G.     Awarding such other and further relief as the Court deems reasonable and just.

2   **DEMAND FOR JURY TRIAL**

3        Plaintiff demands a trial by jury for all issues so triable.

4

5               Respectfully submitted,

6   Dated:  November 12, 2014       **JOE ARROYO**, individually and on behalf of
7               all others similarly situated,

8               By:  /s/ Samuel M. Lasser
               One of Plaintiff's Attorneys

9

10               Samuel M. Lasser (SBN – 252754)
            slasser@edelson.com
            EDELSON PC
11               1934 Divisadero Street
            San Francisco, California 94115
12               Tel: 415.994.9930
            Fax: 415.776.8047

13

14               Rafey S. Balabanian*
            rbalabanian@edelson.com
            Ari J. Scharg*
15               ascharg@edelson.com
            Benjamin S. Thomassen*
16               bthomassen@edelson.com
            Amir C. Missaghi*
17               amissaghi@edelson.com
            EDELSON PC
18               350 North LaSalle Street, Suite 1300
            Chicago, Illinois 60654
19               Tel: 312.589.6370
            Fax: 312.589.6378

20

21               *Pro hac vice* admission to be sought

22               *Attorneys for Plaintiff and the Putative Class*

23

24

25

26

27

28