UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOE ARROYO, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>      v.<br><br>TP-LINK USA CORPORATION, et al.,<br><br>              Defendants. | Case No.  5:14-cv-04999-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 25 |

The instant case is a purported class action suit brought by Plaintiff Joe Arroyo ("Plaintiff") against Defendants TP-Link USA Corporation ("TP-Link USA") and TP-Link Research Institute ("TPRI") (collectively, "Defendants" or "TP-Link") for various breaches of California consumer laws, breach of warranty, fraud and unjust enrichment. See Docket Item No. 1 ("Compl.").

Federal jurisdiction arises pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Presently before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Dkt. No. 25. The Plaintiff opposes this motion. Dkt. No. 30. The Court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7–1(b) and previously vacated the associated hearing date. For the reasons outlined below, the Court grants in part and denies in part Defendants' motion to dismiss.

I.    **FACTUAL BACKGROUND**

Plaintiff is a Florida resident, who purchased Defendants' AV500 PowerLine network adapter (Model TL-PA511KIT) for $64.96 from online retailer NewEgg.com in January, 2014. Compl. ¶¶ 7, 39.  TP-Link USA is a distributor of consumer-grade networking products, including the TP-Link AV500 PowerLine adapters.  See id. at ¶ 14.  TPRI is a division of TP-Link USA established to research and tests their products.  See id. at ¶ 13.  Around May 2012, TP-Link USA launched a line of PowerLine adapters based on the AV500 standard.  See id. at ¶ 15.  PowerLine adapters work by using the electrical wiring in a home to create a data network to enable computers to communicate with each other and the internet.  See id. at ¶¶ 14, 24.  Defendants have marketed and sold their AV500 PowerLine adapters online at retailers such as Newegg.com and Amazon.com, as well as traditional brick-and-mortar retailers.  See id. at ¶ 16.

Plaintiff filed his complaint against Defendants, on behalf of himself and those similarly situated, claiming that Defendants represented that their AV500 PowerLine adapters are capable of transmitting at speeds of "up to 500 Mbps" (megabits per second).  See id. at ¶ 24.  Plaintiff alleges that the statements are false and misleading because the AV500 PowerLine adapters at issue are technologically incapable of transmitting data at speeds of anywhere close to 500 Mbps, and thus, are incapable of transmitting data at speeds of "up to" 500 Mbps.  See id. at ¶ 42. Plaintiff further alleges that had he known that these statements were false, he would not have purchased the product in the first place.  See id.

TP-Link provided online retailers, NewEgg.com and Amazon.com, the product pages with descriptions that include "High-speed AV 500Mbps Powerline Adapter" and "Powerline Gigabit Adapter Starter Kit, up to 500Mbps."  See id. at ¶ 17.  Those statements were depicted as follows:


TP-LINK TL-PA511KIT High-speed AV 500Mbps Powerline Adapter Starter Kit w/Gigabit Port

See id. at ¶ 17, Figure 1, showing Defendants' product description at Newegg.com.

Case No.: 5:14-cv-04999-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1
2
3
4

**TP-LINK TL-PA511 KIT AV500 Powerline Gigabit Adapter Starter Kit, up to 500Mbps**
by TP-LINK

5   See id. at ¶ 17, Figure 2, showing Defendants' product description at Amazon.com.

6   Similarly, the back of the adapters' packaging mirror the same claim "with a speed of up to

7   500 Mbps …"  See id. at ¶ 19.  Finally, Defendants also printed "500Mbps" on the front of their

8   AV500 PowerLine adapters to represent their operating speeds.  Id. at ¶ 21, Figure 6 below.

9
10
11

12
13
14
15
16

17   On November 12, 2014, Plaintiff filed this Complaint asserting six counts for: (1)

18   violations of Cal. Civ. Code Sections 1750 et seq. ("Consumer Legal Remedies Act" or "CLRA");

19   (2) violations of Cal. Bus. Code Sections 17200 et seq. ("Unfair Competition Law" or "UCL"); (3)

20   violations of Cal. Bus. Code Sections 17500 et seq. ("False Advertising Law" or "FAL"); (4)

21   fraudulent inducement; (5) breach of express warranties under Cal. Comm. Code Section 2313;

22   and (6) unjust enrichment.  See Compl. at ¶¶ 53, 74, 87, 94, 105, 115.

23   Presently before the Court is Defendants' motion to dismiss for lack of standing and failure

24   to state a claim.  Dkt. No. 25.

25   **II.   LEGAL STANDARD**

26   A motion to dismiss may be granted under Federal Rule of Civil Procedure 12(b)(6) if the

27   plaintiff fails to plead sufficient facts "to state a claim plausible on its face."  Bell Atl. Corp. v.

28

Case No.: 5:14-cv-04999-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   Twombly, 550 U.S 544, 570 (2007).  Federal Rule of Civil procedure 8(a)(2) requires a plaintiff to

2   plead each claim with sufficient specificity to "give the defendant fair notice of what the … claim

3   is and the ground upon which it rests."  Id. at 555.  Dismissal of a claim is warranted if it falls

4   short of this standard, specifically where it "lacks cognizable legal theory or sufficient facts to

5   support a cognizable legal theory."  Mendiondo v. Centinela Hosp. Mes. Ctr., 521 F.3d 1097, 1104

6   (9th Cir. 2008).  The court must accept as true all "well pleaded allegations."  Love v United

7   States, 915 F.2d 1242, 1245 (9th Cir. 1988).  The court must also construe alleged facts in the light

8   most favorable to the plaintiff.  Schlegel v. Wells Fargo bank, NA, 720 F.3d 1204, 1207 (9th Cir.

9   2013).

10       Fraud based claims are subject to heightened pleading requirements under Federal Rule of

11   Civil Procedure 9(b), where plaintiffs "must state with particularity the circumstances constituting

12   fraud. Fed. R. Civ. P 9(b).  An allegation of fraud must be accompanied by the "who, what, when,

13   where and how" of the misconduct alleged.  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir.

14   1985).  The allegations must be "specific enough to give defendants notice of particular

15   misconduct which is alleged to constitute the fraud charged so they can defend against charges and

16   not just deny that they have done anything wrong."  Id.  The plaintiff "must also plead facts

17   explaining why the statement was false when it was made."  Smith v. Allstate Ins. Co., 160 F.

18   Supp. 2d 1150, 1152 (S.D. Cal 2001).

19   **III.   DISCUSSION**

20       **A.   Extraterritoriality**

21       Defendants argue that Plaintiff cannot assert California consumer protection laws because

22   Plaintiff is a Florida resident and purchased Defendants' products in Florida.  See Dkt. No. 31 at

23   3-4.  The Court disagrees for the following reasons.

24       A plaintiff's non-residency in California is not enough to preclude application of

25   California Consumer protection laws.  Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 598-99

26   (C.D. Cal. 2008).  The majority of choice of law analysis is often done during the class

27   certification stage; however, in this case it would be more appropriate to address it at this stage, as

28

United States District Court
Northern District of California

4

the primary plaintiff, not potential class members, seeks to assert application of California law. Frenzel v. AliphCom, No. 14-cv-0387- WHO, 2014 WL 7387150, at *5 (N.D. Cal. Dec. 10, 2014); Frezza  v. Google Inc., No. 12-cv-0023-RMW, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22, 2013).

In California, there is a two-step process to determine whether the CLRA, the UCL and the FAL, can apply to interstate plaintiffs.  Mazza v. American Honda Motor Co. Inc., 666 F.3d 581, 589-95 (9th Cir. 2012).  First, the plaintiff bears the onus to demonstrate the application of California law comports with due process.  See id.  This involves establishing "sufficient contacts" between the alleged misconduct and the state.  Parkinson, 258 F.R.D. 580, 598-99; Phillip Petroleum Co. v. Shutts, 472 U.S. 797 (1985) at 821-22.  Second, the onus then shifts to the defendant to show that foreign law, rather than California law, should apply to these claims. Mazza, 666 F.3d 581, 590 (9th Cir. 2012); Washington Mutual Bank, FA v. Super. Ct., 24 Cal. 4th 906, 921 (2001).

Here, Defendants argue that under Mazza, a plaintiff cannot assert California consumer protection laws if the transaction (where the goods or service was purchased), took place outside of California.  See Dkt. No. 31 at 1.  Since Plaintiff, a Florida resident, purchased Defendants' product in Florida, they contend he is precluded from asserting violations based on California statute.  See id.

However, Plaintiff argues that the challenged conduct is sufficiently connected with California.  See Dkt. No. 30 at 13.  This alone, however, is not enough to warrant application of California law.  When analyzing whether there is sufficient contacts with California, the court must consider (1) where the defendant does business, (2) whether the defendant's principal offices are located in California, (3) where the potential class members are located, and (4) the location from which the advertising and promotional literature decisions were made.  In re Toyota Motor Corp., 785 F. Supp. 2d 883, 917 (C.D. Cal. 2011).  Plaintiff argues that each of these factors weigh in his favor.  While the Defendants do business all over the country, their principal offices are located in California.  See Dkt. No. 30 at 13.  A large portion of the class members are expected to

United States District Court
Northern District of California

United States District Court
Northern District of California

1   reside in California, due to California's large population and Defendants' business presence in the

2   state.  See id.  Finally, the advertising and promotional literature and practices disputed in the

3   Complaint all emanated from the head offices in California.  See id.

4        Defendants argue that the Plaintiff cannot rely on sufficient contacts alone to apply

5   California law, because consumer protection claims are covered by the jurisdiction in which the

6   transactions took place.  Mazza, 666 F.3d 581, 594 (9th Cir. 2012).  Because it is undisputed that

7   the transaction took place in Florida, Defendants contend that this case is similar enough to Mazza

8   to warrant dismissal based on the Florida transaction.  See Dkt. No. 31 at 3-4.  Defendants'

9   application of this opinion, however, is incomplete as the ruling in Mazza does not erase the

10  Defendants' burden to prove that foreign jurisdiction should apply under the "governmental

11  interest test."  Bruno v. Eckhart Corp., 280 F.R.D 540, 548 (C.D. Cal. 2012).  This test requires

12  consideration of (1) the conflict of laws, (2) the interest of foreign jurisdiction, and (3) which

13  state's interest is most impaired.  See id.  The court may address the governmental interest test at

14  the motion to dismiss stage provided adequate analysis may be made without waiting for full fact

15  discovery.  Frezza, 2013 WL 1736788, at *6-7.  However, Defendants have not addressed any of

16  the three factors of the test in any respect, and so fail to discharge their burden.

17       In sum, the Defendants' reliance on Mazza is incomplete.  Reliance on Mazza without

18  discussion regarding the conflict of laws and the factors of the governmental interest test is

19  insufficient to warrant dismissal.  Forcellati v. Hylands, Inc., 876 F. Supp. 2d 1155, 1160 (C.D.

20  Cal. 2012).  In light of this, Defendants' motion to dismiss claims under the CLRA, UCL and FAL

21  for extraterritorial application of California law is DENIED.

22       **B.   Non-Purchased Products**

23       Defendants assert that Plaintiff purchased only one model of PowerLine adapters,

24  however, Plaintiff's Complaint includes five non-purchased PowerLine adapters.  See Dkt. No. 25

25  at 8; Compl., ¶¶ 1, 39.  As such, Defendants argue that Plaintiff's attempt to include in his lawsuit

26  products he never purchased is improper as Plaintiff lacks the necessary standing to do so.  See id.

27  The Court agrees for the following reasons.

28

6

United States District Court
Northern District of California

1    With exceptions, courts in the Northern District of California generally consider non-

2  purchased products unable to satisfy the standing requirements for claims under California

3  statutes.  Leonhart v. Nature's Path Foods, Inc., No. 13–CV–0492–EJD, 2014 WL 1338161, at *4

4  (N.D. Cal. Mar. 31, 2014); see Ivie v. Kraft Foods Global, Inc., 961 F. Supp. 2d 1033, 1046 (N.D.

5  Cal. 2013).  To provide standing for claims for non-purchased products under the CLRA, UCL

6  and FAL, plaintiffs must detail why the products are substantially similar to those actually

7  purchased.  Miller v. Ghirardelli Chocolate Co., 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012);

8  Leonhart, 2014 WL 1338161, at *4.

9    Here, Plaintiff argues that he brings claims against the five non-purchased PowerLine

10  products because these five products "contain similar misrepresentations and physicality" to the

11  one product Plaintiff purchased.  See Dkt. No. 30 at 24:6-20.  Specifically, Plaintiff states that "the

12  core misrepresentations at issue are virtually identical, as each of the AV500 PowerLine adapter

13  models are advertised as capable of achieving speeds of 'up to 500 Mbps' and further, share

14  common physical characteristics."  Id.

15    This Court has held that because "[p]laintiff asserts claims regarding statements she never

16  saw and products she did not buy" and only alleged "substantial similarity" based on the same

17  labeling statements, the plaintiff lacked standing to bring claims against the non-purchased

18  products and granted dismissal of Plaintiff's claims against the non-purchased products.  See

19  Leonhart, 2014 WL 1338161, at *4.  Similarly, Plaintiff here alleges the non-purchased products

20  are all substantially similar but only provides a cursory footnote including the other models, not

21  delving into the substantial similarity of each model.  Moreover, Plaintiff never states that he

22  viewed marketing materials for any of the five non-purchased products.  This claim alone is not

23  enough to give standing for products the Plaintiff did not purchase, or whose marketing material

24  he did not view.  Wilson v. Frito-Lay North America, Inc., 961 F. Supp. 2d 1134, 1141(N.D. Cal.

25  2013).  Therefore, the Court GRANTS dismissal of Plaintiff's claims against the non-purchased

26  products because Plaintiff has not sufficiently pled how the five non-purchased products are

27  substantially similar to the one product he purchased.

28

7

United States District Court
Northern District of California

### C.     Standing to Seek Remedies

Defendants argue that they did not receive any money or property from Plaintiff because Plaintiff purchased his PowerLine adapters from a third-party.  Compl., ¶ 39.  As such, they assert Plaintiff cannot obtain any restitution from Defendants.  See Dkt. No. 25 at 13.  Defendants also argue that Plaintiff cannot seek injunctive relief because he makes no allegations that he plans to purchase TP-Link PowerLine products at-issue in the future.  See id. at 14.

Actions under the UCL and FAL generally only allow for the remedies of restitution and injunctive relief.  Pfizer Inc. v. Super. Ct., 182 Cal. App. 4th 622, 631 (2010); see Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1144 (2003).  Restitution is available if the defendants received a financial benefit from their alleged misconduct, which resulted in an economic loss for the plaintiff.  ZL Techs., Inc. v. Gartner, Inc., No. CV 09–02393 JF (RS), 2009 WL 3706821, at *10 (N.D. Cal. Nov. 4, 2009).

Here, Plaintiff alleges that Defendants received a financial benefit from him as a result of their unlawful conduct.  Compl. ¶¶ 100,115.  However, Defendants argue that they did not receive any money or property from Plaintiff because he purchased the PowerLine adapters from a third-party.  See Dkt. No. 25 at 13.  Even if money is not received directly, if the Defendants benefit economically through a third-party, then the Plaintiff is entitled to restitution.  Shersher v. Super. Ct., 154 Cal. App. 4th 1491, 1494 (2007) (holding that the remedy of restitution under UCL was not limited to plaintiffs making direct payments to defendants).  Thus, the indirect transaction, via a third-party website, between Plaintiff and Defendants, constitutes a financial benefit received by the Defendants, resulting from the alleged misconduct and allegedly causing economic loss for the plaintiff.

Next, Defendants assert that Plaintiff cannot seek injunctive relief because Plaintiff fails to identify allegations in his Complaint that suggests that he maintains an interest in purchasing the PowerLink adapter in the future.  See Dkt. No. 25 at 14.  Injunctive relief requires a plaintiff to demonstrate "he has suffered or is threatened with a 'concrete and particularized' legal harm … coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'"  Bates v.

Case No.: 5:14-cv-04999-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)). A plaintiff who is not entitled to seek injunctive relief may not represent a class that seeks such relief or is entitled to seek such relief. Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999). The requirement for injunctive relief therefore requires the Plaintiff to show he intends to purchase the AV500 product in the future, thus necessitating the need for injunctive relief. Here, Plaintiff claims that he may purchase the PowerLine AV500 devices in the future. See Dkt. No. 30 at 14:24-15:9. However, it is not credible for Plaintiff to assert he will purchase the exact same product which prompted his Complaint. Furthermore, Plaintiff cannot plausibly allege he will be induced or deceived by the same representation he claims are false. Frenzel, 2014 WL 7387150 at *11. In addition, Plaintiff has not presented a viable reason to permit him leave to assert further standing allegations. The fact that Plaintiff claims that he may purchase the product at-issue in the future is inconsistent with his theory of liability, and with any injunctive relief that could issue in this case. As such, Plaintiff's arguments in support of standing are unpersuasive.

In sum, Defendants' motion to dismiss the request for restitution will be DENIED. Defendants' motion to dismiss the request for injunctive relief will be GRANTED. The dismissal of this relief will be without leave to amend since allowing for amendment would be futile under the circumstances. Schreiber Distrib. Co. v. Serv–Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir.1986).

**D.    Inclusion of TPRI as Co-Defendant**

Defendants assert that Plaintiff's Complaint fails to allege any individual allegations against TPRI as required by the Federal Rules of Civil Procedure. See Dkt. No. 31 at 14-15. As such, they argue that TPRI is not a proper party to this litigation. See id. The Court agrees for the following reasons.

"[In] the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." Fields v. Wise Media, LLC, No. C 12-05160 WHA, 2013 WL 3187414 (N.D. Cal. June 21, 2013) (quoting

United States District Court
Northern District of California

1    Swartz v. KPMG LLP, 476 F.3d 756 (9th Cir. 2007).  The rule in 9(b) requires claims be pleaded

2    with particularity as to details of each defendants respective conduct in the misrepresentation.

3    Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540-541 (9th Cir. 1989).  However, such

4    requirements may be relaxed where details of each party's involvement lie more in the knowledge

5    of the opposite party.  Susilo v. Wells Fargo Bank, N.A., 796 F. Supp. 2d 1177, 1191 (C.D. Cal.

6    2011).

7          Here, Plaintiff makes identical claims against both TP-Link USA and TPRI alleging they

8    acted jointly and in concert in their fraud.  Compl. ¶ 2:20-23.  Plaintiff concedes that TP-Link

9    USA manufactured and marketed the devices, but alleges that the marketing and advertising

10    emanated from either the sales and marketing department at TP-Link USA and/or from technical

11    writers or engineers at TPRI.  Compl. ¶ 22.  However, Defendants point out that the allegations of

12    the two entities acting in concert have no legal justification.

13          Plaintiffs may not "hurl allegations in the defendant's general direction, in the hopes some

14    of it sticks."  Mathison v. Bumbo, No. SA CV08-0369 DOC ANX, 2008 WL 8797937, at *3 (C.D.

15    Cal. Aug. 18, 2008).  Even with a relaxed pleading standard, Plaintiff's identical allegations for

16    TPRI and TP-Link USA do not provide sufficient detail to justify connecting TPRI as a party.

17    Moreover, Plaintiff's allegation against TPRI's involvement was in a product that was marketed

18    and distributed in 2012, a year before TPRI was incorporated.  See Dkt. No. 25 at 9:12-14.  The

19    allegation that TPRI, which is in charge of testing and research, was part of the dissemination of

20    fraudulent or misleading advertising has no basis, except that TPRI is affiliated with TP-Link USA

21    itself.  Therefore, this claim is GRANTED because of Plaintiff's failure to allege any actionable

22    conduct on the part of TPRI.

23        **E.**      **Fraud-Based Claims**

24         Defendants proffer two arguments to generally dismiss all of Plaintiff's fraud-based

25    claims.  First, Defendants contend that the three articles cited in the Complaint demonstrate that

26    reasonable consumers would not be deceived by their advertising that the PowerLine AV500

27    adapters can attain speeds of up to 500 Mbps.  See Dkt. No. 31 at 6-12.  As such, Defendants

28

Case No.: 5:14-cv-04999-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   argue that they did not have "exclusive knowledge" of the alleged deficiencies.  See id.  Based on

2   this lack of exclusive knowledge, they argue that Plaintiff's fraudulent omission claims under the

3   UCL and CLRA fail.  See id.  Second, Defendants contend that Plaintiff must meet the Rule 9(b)

4   heightened pleading standard and fails to do so.  See id.  Specifically, Defendants assert that the

5   Complaint fails to identify how Plaintiff "estimate[d] that he was never able to achieve speeds

6   greater than about 100 Mbps," thereby falling short of the Rule 9(b) standard.  See id.  The Court

7   disagrees with Defendants arguments for the following reasons.

8        A claim is plausible on its face "when the plaintiff pleads factual content that allows the

9   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

10  Iqbal, 556 U.S. at 678.  "In all cases, evaluating a complaint's plausibility is a 'context-specific'

11  endeavor that requires courts to 'draw on … judicial experience and common sense.'"  Levitt v.

12  Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014).

13       The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus.

14  & Prof. Code § 17200.  Similarly, the FAL prohibits "unfair, deceptive, untrue, or misleading

15  advertising."  Cal. Bus. & Prof. Code § 17500.  The two are related such that "'any violation of

16  the false advertising law … necessarily violates' the UCL."  Kasky v. Nike, Inc., 27 Cal. 4th 939,

17  950 (2002).  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

18  practices." Cal. Civ. Code § 1770.  To meet the pleading standard for fraud claims under the UCL,

19  CLRA, and FAL, a plaintiff must show that "members of the public are likely to be deceived."

20  Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008).  The challenged conduct "is

21  judged by the effect it would have on a reasonable consumer."  Puentes v. Wells Fargo Home

22  Mortg., Inc., 160 Cal. App. 4th 638, 645 (2008) (citation omitted).  A true representation can

23  mislead a reasonable consumer if it is actually misleading or has the capacity, likelihood or

24  tendency to deceive or confuse members of the public.  Kasky, 27 Cal. 4th at 951.  Whether a

25  product label is deceptive so as to mislead a reasonable consumer is normally a question of fact

26  incapable of resolution on a motion to dismiss.  Williams, 552 F.3d at 938-39.  However, in

27  certain "rare" cases, lack of deception can be found as a matter of law.  See id. at 939.

28

United States District Court
Northern District of California

Case No.: 5:14-cv-04999-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1

2

3

4

5

6

7

8

United States District Court
Northern District of California

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   In In re Tobacco II Cases, 46 Cal.4th 298, 326 (2009), the California Supreme Court held that for a fraudulent business practices claim, the UCL mandates that plaintiff demonstrate "actual reliance" upon the defendant's misrepresentation or omission.  "[P]laintiff must show that he personally lost money or property because of his own actual and reasonable reliance on the allegedly untrue or misleading statements."  Id. at 326-28.  Reliance can be demonstrated by showing that but-for defendant's conduct, plaintiff would not, in all reasonable probability, have engaged in the injury-producing conduct.  In re Actimmune Marketing Litig., No. 08–02376–MHP, 2009 WL 3740648, at *8 (N.D. Cal. Nov. 6, 2009).

   Here, Defendants argue that Plaintiff fails to allege any false statements or misrepresentation.  See Dkt. No. 25 at 14.  In addition, Defendants argue that Plaintiff fails to allege with specificity how the representations he claims to have relied on were provided by TP-Link.  See id.  Therefore, Defendants argue that these allegations fail to meet the heightened pleading requirement to allege fraud.  See id.

   Looking at the Complaint, Plaintiff first alleges that the Defendants, TP-Link USA ("who") falsely claim that their AV500 PowerLine network adapters could run at or near speeds of 500 Mbps ("what").  See Compl. ¶ 14-22.  Plaintiff further alleges that the representations appear in different forms in a number of mediums since the launch of the AV500 range in May 2012 ("when").  See id.  This includes on the product itself, the physical packaging, and on the websites of online retailers who received the advertising material from the Defendants ("where").  See id.  Finally, the Plaintiff alleges the representations are false and deceptive because the product is technologically incapable of running at the advertised speed ("how").  See id.

   Second, Plaintiff alleges that Defendants' representation of speeds of "up to 500 Mbps" is misleading as the product can never reach anywhere close to those speeds.  See Dkt. No. 30 at 1-2.  Plaintiff asserts that these advertisements regarding the speed of the AV500 is what induced him to purchase the product in the first place.  See id.  But for these representations, Plaintiff claims he would not have bought the product or would have paid less for it.  Compl ¶ 40-41.  Plaintiff also provides evidence of the technology's incapability to reach the advertised 500 Mbps.  Id. ¶¶ 29-38.

Case No.: 5:14-cv-04999-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1        Despite these allegations Defendants argue that the advertised speeds that the Plaintiff

2  relied on include the qualifying term "up to" 500 Mbps, and not simply 500 Mbps. <u>See</u> Dkt. No

3  25 1. As such, Defendants assert that Plaintiff cannot reasonably rely on such qualifying term to

4  support a claim for misrepresentation that the product should work at 500 Mbps. <u>See</u> <u>id.</u> This

5  argument is unpersuasive because the inclusion of the "up to" qualification can itself be

6  misleading if the product cannot perform at the advertised level of 500 Mbps. <u>See</u> <u>Herron v. Best</u>

7  <u>Buy Co. Inc.</u>, 924 F. Supp. 2d 1161, 1171-73 (E.D. Cal. 2013). Most reasonable consumers would

8  not expect a representation of "up to 500 mbps" to mean the product consistently performed at that

9  level. <u>See</u> <u>Maloney v. Verizon Internet Servs., Inc.</u>, ED CV 08–1885–SGL(AGRx), WL 812987,

10  at * 4 (C.D. Cal. Oct. 2009). Plaintiff here claims that a reasonable consumer would believe that

11  the product would be at least capable of performing at or close to the advertised 500 Mbps. <u>See</u>

12  Dkt. No. 30 at 3-8. Defendants counter that the articles the Plaintiff uses to demonstrate this

13  assertion show that the variation in speed was, in fact, common knowledge and therefore did not

14  provide support for their allegations. <u>See</u> Dkt. No. 31 at 6-8. Even if this was the case, a

15  circumstantial variation in speed is different to the incapability the Plaintiff alleges. Furthermore,

16  the Plaintiff is not required to objectively prove the incapability and therefore the falsity of the

17  representation at this stage, but must simply state a claim plausible on its face. <u>Williams</u>, 552 F.3d

18  at 938. Those with knowledge of the technology may be more informed as to the capabilities of

19  such a product, and whether the 500 Mbps is a realistic speed. However, if the allegations are

20  construed in the light most favorable to the Plaintiff, it is apparent a significant proportion of the

21  population is likely to be deceived by the representations made, even with an "up to" qualification.

22        As such, the Court finds that Plaintiff has met the Rule 9(b) pleading standard, showing

23  that members of the public are likely to be deceived. Plaintiff also adequately alleged reliance by

24  pointing out that he relied on representations on the alleged deceptive advertisements about the

25  speed on the retailer's website and the product packaging, and had he known that the product

26  would not perform as advertised, he would not have bought the product, for which he paid money

27  and consequently suffered an economic injury.

28

1                **i.    Fraudulent Omission Claim under CLRA and UCL**

2          Defendants argue that they did not have "exclusive knowledge" of the alleged deficiencies

3    concerning the speed of the PowerLine AV500 adapters.  See Dkt. No. 31 at 10-11.  Based on this

4    lack of exclusive knowledge, they argue that Plaintiff's fraudulent omission claims under the UCL

5    and CLRA fail.  See id.

6          A claim under the CLRA prohibits deceptive acts and practices "undertaken by any person

7    in a transaction intended to result or which results in the sale of goods or services to any

8    consumer."  Cal. Civ. Code § 1770(a).  A transaction, according to the statute "means an

9    agreement between a consumer and any other person."  Id. § 1761(e).  These two provisions taken

10   together generally require a consumer transaction between a plaintiff and a defendant to establish

11   liability under the CLRA.  See Schauer v. Mandarin Gems of Cal., Inc., 125 Cal. App. 4th 949,

12   960 (2005).  However, when a plaintiff can demonstrate the defendant "had exclusive knowledge

13   of a defect and the consumer relied upon that defect, the CLRA's protection extends to the

14   manufacturer as well, regardless of whether the consumer dealt directly with [the defendant]."

15   Tietsworth v. Sears, 720 F. Supp. 2d 1123 (N.D. Cal. 2010); see Chamberlain v. Ford, 369 F.

16   Supp. 2d 1138, 1144 (N.D. Cal. 2005) (holding that plaintiffs had standing to bring CLRA claims

17   against the manufacturer, "despite the fact that they never entered into a transaction directly with

18   Defendant").

19         Both the claims under the CLRA and the UCL are based on the defendant's purported duty

20   to disclose their alleged exclusive knowledge regarding the capability of the AV500 PowerLine

21   product.  Compl. ¶¶ 62-68 and 79-81.  The duty to disclose exclusive knowledge is the same under

22   the UCL as it is under the CLRA.  See Herron, 924 F. Supp. 2d at 1174-75 (2013).  The plaintiff

23   must allege facts showing the defendant had exclusive knowledge of omitted facts which the

24   plaintiff could not have reasonably discovered.  Id. at 1175.  These facts must be material to the

25   transaction, meaning a reasonable consumer would deem it important in determining how to act in

26   the transaction at issue.  In re Adobe Privacy Sys. Litig., 66 F. Supp. 3d 1197 (N.D. Cal. 2014).

27         Here, Plaintiff alleges that the Defendants held exclusive knowledge about their product

28

United States District Court
Northern District of California

Case No.: 5:14-cv-04999-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   being incapable of reaching 500 Mbps, thus giving rise to the UCL and CLRA claims.  Compl., ¶¶

2   62-68 and 79-81.  Defendants assert that the alleged deficiencies were "widely known" referring

3   to "numerous articles" cited by the Plaintiff, which discuss the variation in the product's operation

4   speeds.  Dkt. No. 31 at 11.  Although these articles discuss the drastic variation in speed, they do

5   not give notice of the technology being incapable of reaching 500 Mbps.  Plaintiff alleges this

6   incapability was a material fact of which Defendants had exclusive knowledge.  Compl ¶40-43.

7   Thus, Plaintiff has sufficiently alleged that Defendants had exclusive knowledge of the

8   deficiencies in their product, and the CLRA and UCL claims may stand.

9          **ii.   Fraudulent Inducement**

10        Defendants argue that Plaintiff has failed to plead there was a misrepresentation related to

11   the speed of PowerLine AV500 adapters or justifiable reliance based on that misrepresentation.

12   See Dkt. No. 31 at 9-10.

13        Plaintiff's claim for fraudulent inducement requires: (1) misrepresentation, (2) knowledge

14   of falsity of the representation, (3) intent to induce reliance, (4) justifiable reliance, and (5)

15   resulting damages.  Swingless Gold Club Corp. v. Taylor, 732 F. Supp. 2d 899, 908 (N.D. Cal.

16   2010).  This claim sounds in fraud, so is covered by the heightened pleading standard of rule 9(b).

17   Fed. R. Civ. P 9(b).  The elements of this action are similar to the statutory claims discussed

18   above.  As with the statutory claims, Plaintiff's pleadings here also satisfy the Rule 9(b)

19   particularity requirements.  Plaintiff has specifically pled a misrepresentation, alleged the

20   Defendants had knowledge of the falsity of the representation through their exclusive knowledge,

21   alleged the Defendants intended to induce reliance on the representations to boost sales and

22   specifically plead resulting financial damages.  See Dkt. No. 30 at 16-17.

23        All that remains to have a valid claim for fraudulent inducement is a sufficient pleading for

24   justifiable reliance on the misrepresentation.  Here, Defendants strongly contend that Plaintiff fails

25   to show justifiable reliance on the advertising material the Plaintiff claims induced him, due to the

26   "up to" qualification and a disclaimer stating speeds will vary.  See Dkt. No. 25 at 16.  However,

27   Plaintiff points out that these two qualifications fail to preclude justifiable reliance, as Plaintiff

28

Case No.: 5:14-cv-04999-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   alleges the AV500 PowerLine product is incapable of reaching advertised speeds not just that

2   speeds vary from the advertised 500 Mbps.  See Dkt. N0. 30 at 3-8.  Plaintiff is correct, as even

3   though he could not have justified a belief that the product would work at or around 500 Mbps, he

4   justifiably relied on representations that the product would at least be capable of performing close

5   to the advertised speed on a home electrical system.

6           Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's fraud-based

7   claims.

8           **F.      Breach of Express Warranty**

9           Defendants argue that Plaintiff cannot credibly claim that he reasonably relied upon

10  Defendants' statements that he would be able to transmit at 500 Mbps via a PowerLine device.

11  See Dkt. No. 31 at 9.  Therefore, Defendants' assert that Plaintiff's claim for breach of express

12  warranty must be dismissed for failure to allege reasonable reliance.  See id.  The Court disagrees

13  for the following reasons.

14          To successfully claim a breach of express warranty, "a plaintiff must prove (1) the seller's

15  statements constitute an 'affirmation of fact or promise' [which relates to the goods] or a

16  'description of the goods'; (2) the statement was 'part of the basis of the bargain'; and (3) the

17  warranty was breached."  Yastrab v. Apple, No. 14–CV–01974-EJD, 2015 WL 1307163 at *9

18  (N.D. Cal. March 23, 2015); Weinstat v. Dentsply Int'l, Inc., 180 Cal. App. 4th 1213, 1227 (2010)

19  (quoting Keith v. Buchanan, 173 Cal. App. 3d 13, 20 (1985)).

20          To satisfy the first element, Plaintiff must "identify a 'specific and unequivocal written

21  statement'" about the product that constitutes an 'explicit guarantee [ ].'"  In re iPhone 4S

22  Consumer Litig., No. C 12–1127-CW, 2014 WL 589388 at *29, (N.D. Cal. Feb. 14, 2014)

23  (quoting Maneely v. Gen. Motors Corp., 108 F.3d 1176, 1181 (9th Cir.1997)).  The unequivocal

24  terms with which the seller describes its wares must form part of the basis for the bargain.  See

25  Cal. Com. Code § 2313(1) (b).

26          Here, Plaintiff concedes that Defendants made no warranty that the products would

27  perform at 500 Mbps, but instead contends that they warranted the technology would be capable of

28

United States District Court
Northern District of California

Case No.: 5:14-cv-04999-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

this speed.  See Dkt. No. 30 at 17-19.  Moreover, Plaintiff claims the advertising on third-party websites, the packaging and on the device itself constitutes an express warranty to the effect that the device could transmit at 500 Mbps.  See id.  Although an express warranty may be validly disclaimed, "words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other, but … negation or limitation is inoperative to the extent that such construction is unreasonable."  Long v. Hewlett Packard, No. 06-CV-02816-JW, 2007 WL 2994812, at *5-6 (N.D. Cal. July 27, 2007); see also Cal. Comm. Code § 2316.  As such, the Court is inclined to construe these representations as a warranty that the technology was, in some capacity, capable of performing at the advertised speed.  Plaintiff asserts that he relied on this warranty when choosing to purchase the product and alleges there was a breach of this warranty as the product can never reach speeds of 500 Mbps.  See Dkt. No. 30 at 17-19.

However, Defendants argue there could be no reasonable reliance on a warranty of speed, as the disclaimers provide actual performance of the device would be "up to" 500 Mbps, and that those speeds were subject to "environmental factors."  See Dkt. No. 25 at 17-18.  While these statements would disclaim any warranty that the device would consistently be at 500 Mbps as possible, it does not disclaim the warranty that the technology was capable of such speeds.  To do so would be unreasonable and contrary to the 500 Mbps representation.  Therefore, the Plaintiff has sufficiently pled that there is an express warranty, where the PowerLine device could perform at up to 500 Mbps.  Finally, Plaintiff has sufficiently pled that he reasonably relied on this warranty when choosing to purchase the PowerLine product and that the warranty was breached.

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's breach of express warranty claim because Plaintiff has shown reasonable reliance.

### G.   Unjust Enrichment

Defendants argue that Plaintiff's claim of unjust enrichment cannot stand because (1) California courts do not recognize unjust enrichment as an independent cause of action, and (2) Plaintiff is not entitled to restitution from Defendants since he purchased his PowerLine adapter

Case No.: 5:14-cv-04999-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   from a third party.  See Dkt. No. 25 at 19-20.  The Court disagrees for the following reasons.

2           Courts in this district have diverged in their opinions on unjust enrichment as an

3   independent claim.  Rosado v. eBay Inc., 53 F. Supp. 3d 1256, 1267 (N.D. Cal. 2014).  Sometimes

4   the court finds the claims may not stand as they are duplicative of statutory claims.  Pardini v.

5   Unilever United States, Inc., 961 F. Supp. 2d 1048 (N.D. Cal. 2013); Pratt v. Whole Foods Mkt.

6   California, Inc., No. 5:12-CV-05652-EJD, 2014 WL 1324288 (N.D. Cal. Mar. 31, 2014).  Others

7   state that these claims may stand as alternative form of recovery on a quasi-contractual basis.

8   Larsen v. Trader Joe's Co., No. C 11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012);

9   Blennis v. Hewlett-Packard Co., No. C 07-00333 JF, 2008 WL 818526 (N.D. Cal. Mar. 25, 2008).

10          The Ninth Circuit affirmed that in California, there is not a standalone cause of action for

11  unjust enrichment, which is synonymous with restitution.  Astiana v. Hain Celestial Grp., Inc., 783

12  F.3d 753, 762 (9th Cir. 2015).  However, unjust enrichment and restitution "describe the theory

13  underlying a claim that a defendant has been unjustly conferred a benefit."  Id.  Furthermore, "the

14  person receiving the benefit is required to make restitution only if the circumstances are such that,

15  as between the two individuals, it is unjust for the person to retain it."  Id.  Restitution claims due

16  to unjust enrichment have been recognized when there is no contractual relationship between the

17  parties.  Astiana, 783 F.3d at 762; Buckley v. Align Tech., Inc., No. 5:13-CV-02812-EJD, 2014

18  WL 3778921 (N.D. Cal. July 31, 2014); see also In re Apple In–App Purchase Litig., 855 F. Supp.

19  2d 1030, 1042 (N.D. Cal. 2012).  When faced with this type of claim, a court may "construe the

20  [unjust enrichment] cause of action as a quasi-contract claim seeking restitution."  Astiana, 783

21  F.3d at 762 (quoting Rutherford Holdings, LLC v. Plaza Del Rey, 223 Cal. App. 4th 221 (2014)).

22          Here, Plaintiff alleges that the Defendants unjustly obtained benefit from "deceptive and

23  misleading advertising" and claim that under the principle of unjust enrichment this benefit should

24  be restored to Plaintiff.  Compl. ¶ 117.  Moreover, Plaintiff contends that unjust enrichment can be

25  pursued as an alternative theory of relief.  See Dkt. No. 30 at 21.  Following the decision in

26  Astiana, the "straightforward statement" that the Defendants were "unjustly enriched" due to

27  alleged false and misleading advertising, is sufficient to state a quasi-contractual claim.  Astiana,

28

United States District Court
Northern District of California

18

1    783 F.3d at 762.  Therefore, Plaintiff has sufficiently pled that the Defendants received and

2    unjustly retained a benefit resulting from the alleged false and misleading advertisement.

3    Accordingly, Defendants' motion to dismiss this claim is DENIED.

4    **IV.    CONCLUSION**

5         Based on the foregoing, Defendants' Motion to Dismiss is GRANTED IN PART and

6    DENIED IN PART.  It is granted as to injunctive relief, which is DISMISSED WITHOUT

7    LEAVE TO AMEND, granted as to the five non-purchased products WITH LEAVE TO

8    AMEND, and granted as to TPRI as co-defendant WITH LEAVE TO AMEND.  It is denied in all

9    other aspects.

10        Any amended Complaint filed in response to this order must be filed on or before October

11   16, 2015.

12        **IT IS SO ORDERED.**

13   Dated: September 29, 2015

14   

15   EDWARD J. DAVILA
     United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Case No.: 5:14-cv-04999-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS